IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

| | |
|---|---|
| JERRY "BUD" HOLMES, JAY HOUSE, CHANNING KAMMLAH, DREW PHILLIPS, WILLIS MCCUTCHEON, MICHAEL JACKSON, JESSICA TERRELL, JASON WEST, SAMUEL "TREY" WEAVER, DEREK DOLLAHITE, BRIAN MURRY, DIANA RICHARTE, DAVID HUTSON, AND JAMES SIKES, <br><br> Plaintiffs, <br><br> v. <br><br> XL SPECIALTY INSURANCE COMPANY, <br><br> Defendant, <br><br> v. <br><br> ROSS GLENN, <br><br> Intervenor. | CIVIL ACTION: 5:23-CV-00132-H |

**INTERVENOR ROSS GLENN'S FIRST AMENDED COMPLAINT FOR DECLARATORY JUDGMENT AND FOR DAMAGES**

TO THE HONORABLE COURT:

COMES NOW, **ROSS GLENN, INTERVENOR**, and requests that this Court declare, pursuant to Rule 57 of the Federal Rules of Civil Procedure and 28 U.S.C. §§ 2201 and 2202, that the Defendant **XL SPECIALTY INSURANCE COMPANY** has a duty to advance defense costs and to indemnify Intervenor Ross Glenn under certain insurance policies, and that the Court enter judgment against Defendant XL Specialty Insurance Company for the damages sought herein, and in support thereof respectfully shows this Honorable Court, as follows:

# I.

## STATEMENT OF RELIEF SOUGHT

1.01    This dispute arises from Defendant **XL SPECIALTY INSURANCE COMPANY**'s ("Defendant" or "XL Specialty") refusal to pay the costs to defend and indemnify Intervenor Ross Glenn ("Intervenor" or "Glenn") as required under certain insurance policies described and identified herein.  Glenn is a beneficiary and an insured under policies of insurance issued by Defendant to protect against his liability and to cover his defense costs in the event that Glenn was sued or a claim was made against him.  The policies impose a duty to advance defense costs and/or pay defense expenses as well as indemnify Glenn in connection with a claim.  Yet when claims were asserted against Glenn, Defendant refused to advance Glenn's legal defense and/or reimburse the same.  Glenn seeks both monetary relief and non-monetary relief in the form of a declaratory judgment. The relief sought is within the jurisdictional limits of the court.

# II.

## PARTIES AND SERVICE OF CITATION

2.01    Plaintiff, Jerry "Bud" Holmes, is an individual residing in Lubbock County, Texas, who may be served with Intervenor Ross Glenn's First Amended Complaint for Declaratory Judgment and for Damages ("Glenn's FAC") by and through his attorney of record, J. Paul Manning of the Field, Manning, Stone, Hawthorne & Aycock, PC law firm.

2.02    Plaintiff, Jay House, is an individual residing in Lubbock, Lubbock County, Texas, who may be served with Glenn's FAC by and through his attorney of record, J. Paul Manning of the Field, Manning, Stone, Hawthorne & Aycock, PC law firm.

2.03    Plaintiff, Channing (Baisley) Kammlah, is an individual residing in Lubbock, Lubbock County, Texas, who may be served with Glenn's FAC by and through his attorney of record, J. Paul Manning of the Field, Manning, Stone, Hawthorne & Aycock, PC law firm.

2.04   Plaintiff, Drew Phillips, is an individual residing in Lubbock, Lubbock County, Texas, who may be served with Glenn's FAC by and through his attorney of record, J. Paul Manning of the Field, Manning, Stone, Hawthorne & Aycock, PC law firm.

2.05   Plaintiff, Willis McCutcheon, is an individual residing in Shallowater, Lubbock County, Texas, who may be served with Glenn's FAC by and through his attorney of record, J. Paul Manning of the Field, Manning, Stone, Hawthorne & Aycock, PC law firm.

2.06   Plaintiff, Michael Jackson, is an individual residing in Lubbock, Lubbock County, Texas, who may be served with Glenn's FAC by and through his attorney of record, J. Paul Manning of the Field, Manning, Stone, Hawthorne & Aycock, PC law firm.

2.07   Plaintiff, Jessica Terrell, is an individual residing in Lubbock, Lubbock County, Texas, who may be served with Glenn's FAC by and through his attorney of record, J. Paul Manning of the Field, Manning, Stone, Hawthorne & Aycock, PC law firm.

2.08   Plaintiff, Jason West, is an individual residing in Amarillo, Potter County, Texas, who may be served with Glenn's FAC by and through his attorney of record, J. Paul Manning of the Field, Manning, Stone, Hawthorne & Aycock, PC law firm.

2.09   Plaintiff, Samuel "Trey" Weaver, is an individual residing in Lubbock, Lubbock County, Texas, who may be served with Glenn's FAC by and through his attorney of record, J. Paul Manning of the Field, Manning, Stone, Hawthorne & Aycock, PC law firm.

2.10   Plaintiff, Derek Dollahite, is an individual residing in Lubbock, Lubbock County, Texas, who may be served with Glenn's FAC by and through his attorney of record, J. Paul Manning of the Field, Manning, Stone, Hawthorne & Aycock, PC law firm.

2.11   Plaintiff, Brian Murry, is an individual residing in Lubbock, Lubbock County, Texas, who may be served with Glenn's FAC by and through his attorney of record, J. Paul

Manning of the Field, Manning, Stone, Hawthorne & Aycock, PC law firm.

2.12   Plaintiff, Diana Richarte, is an individual residing in Lubbock, Lubbock County, Texas, who may be served with Glenn's FAC by and through his attorney of record, J. Paul Manning of the Field, Manning, Stone, Hawthorne & Aycock, PC law firm.

2.13   Plaintiff, David Hutson, is an individual residing in Amarillo, Potter County, Texas, who may be served with Glenn's FAC by and through his attorney of record, J. Paul Manning of the Field, Manning, Stone, Hawthorne & Aycock, PC law firm.

2.14   Plaintiff, James Sikes, is an individual residing in Lubbock, Lubbock County, Texas, who may be served with Glenn's FAC by and through his attorney of record, J. Paul Manning of the Field, Manning, Stone, Hawthorne & Aycock, PC law firm.

2.15   Defendant **XL SPECIALTY INSURANCE COMPANY** is a foreign insurance company selling multiple lines of insurance, organized under the laws of the State of Delaware, authorized by and through a certificate of authority issued by the Texas Department of Insurance to engage in the insurance business in Texas, and having its principal place of business in the state of Connecticut. Defendant has made an appearance in this cause by and through its attorney, Michael B. Hess, Akerman, LLP; Natasha N. Taylor, Ronnie L. Flack, Jr., WRIGHT CLOSE & BARGER, LLP, through whom Defendant may be served with Glenn's FAC.

2.16   Intervenor, Ross Glenn, is an individual residing in Randall County, Texas. Intervenor has made an appearance in this cause by and through his undersigned attorneys, David Mullin, Mark S. Logsdon, and Molly Manning, all of MULLIN HOARD & BROWN, LLP.

### III.

#### VENUE AND JURISDICTION

3.01   This Court has jurisdiction over the parties and subject matter of this suit as all of the Plaintiffs and Intervenor are residents of Texas. Further, Defendant XL Specialty Insurance

Company is authorized to sell insurance products in Texas pursuant to a certificate of authority issued by the Texas Department of Insurance which subjects it and the interpretation of the policies it sells to Texas residents to the jurisdiction of this Court.

3.02  Venue is proper in the Lubbock Division of the Northern District of Texas pursuant to 28 U.S.C.S. § 1332 and 1391 because the loss complained of and the policy holder and beneficiary of the policy occurred or reside in Lubbock, Lubbock County, Texas.

## IV.
### BASIS FOR DECLARATORY RELIEF

4.01  The declarations requested herein by Glenn are properly brought as the declaratory judgment will (i) serve a useful purpose in clarifying and settling the legal relations at issue as between Glenn and Defendant, and (ii) provide relief from the uncertainty, insecurity, and controversy giving rise to the proceeding.

## V.
### THE INSURANCE POLICIES

5.01  Defendant issued insurance policies ELU173540-21 (the "Primary Policy") and ELU173544-21 (the "A-Side Policy") to Happy Bancshares, Inc. ("Happy Bancshares"). Happy State Bank ("Happy") was a subsidiary bank of Happy Bancshares. The Primary Policy and the A-Side Policy may be referred to herein collectively as the "Policies." Glenn is an insured under the Policies.

## VI.
### FACTUAL BACKGROUND

**Original Complaint in the Underlying Lawsuit**

6.01  On or about March 3, 2023, Centennial Bank, as the successor-in-interest to Happy State Bank ("Centennial") filed suit against seventeen former employees and officers of the West

Texas branches of Happy in the United State District Court for the Northern District of Texas Lubbock Division in Civil Action No. 5:23-cv-44. ("Underlying Lawsuit").  Attached as Exhibit A is Centennial's Original Complaint filed in the Underlying Lawsuit ("Original Complaint").

6.02   Centennial's 111-page Original Complaint asserts ten sweeping claims against the former employees and officers ("Litigation Defendants") of Happy. Included as Litigation Defendants in the Underlying Lawsuit are Glenn and the original Plaintiffs here, Jerry "Bud" Holmes, Jay House, Channing (Baisley) Kammlah, Drew Phillips, Willis McCutcheon, Michael Jackson, Jessica Terrell, Jason West, Samuel "Trey" Weaver, Derek Dollahite, Brian Murry, Diana Richarte, James Sikes, and David Hutson.  While the Litigation Defendants vehemently deny the allegations within the Original Complaint against them, it is necessary to address these allegations in the Original Complaint for the purpose of establishing coverage.  As such, Centennial's allegations within this or any other pleading should not be deemed or construed as an admission of any allegation by Intervenor, each of which is expressly denied by Intervenor.

6.03   Centennial contends that beginning in October of 2021, the Litigation Defendants concocted a grand scheme to "steal" Happy's trade secrets and other confidential information, so that they could present a ready-to-use "Bank in a Box" to Happy's competitor, American State Bank ("ASB"). In reality, Happy entered into a Merger Agreement with Centennial in September of 2021 and the merger was completed on April 1, 2022.

6.04   In the months and weeks prior to the merger, Happy was preparing to merge its core computer and email system in conjunction with the upcoming merger and members of Happy's IT department supervised the downsizing and/or deletion of non-essential and older emails of Litigation Defendants to expedite the conversion from a server-based Outlook email program to the cloud-based Microsoft Office 365 utilized by Centennial.  The allegations in the

Original Complaint take issue with these authorized actions that occurred by Centennial's pleadings as early as October 2021 and continued up through and beyond the date of merger of April 1, 2022. **Orig. Compl. ¶¶ 3–4, 6, 67–68, 94–112, 129–134, 156–159, 168, 177–181, 191–194, 203, 213–215, 225–226, 235–239, 248–252, 260–262, 270–272, 280–281, 289, 303–305, 315–316.**

6.05    In the weeks following the merger, each of the original Plaintiffs and Intervenor accepted employment with ASB, a previously existing bank with brand recognition in Lubbock[1] that was starting new branches in West Texas.

6.06    Centennial alleges that the Litigation Defendants "rob[bed] Happy Bank of its most sensitive documents and Confidential Information . . . ." **Orig. Cmplt. ¶ 67**. Centennial further alleges that (1) **<u>while employed</u>** by Happy, Litigation Defendants accessed confidential information related to their job duties that they were fully authorized to access; (2) within some subjectively close temporal interval (e.g., "around the same time"), Litigation Defendants accessed technology "capable of transmitting information"; and (3) "upon information and belief," a handful of the customers whose files Litigation Defendants accessed now have loans with ASB. **Orig. Cmpl. ¶¶ 157, 168, 182, 193, 213, 227, 237, 250, 262, 273, 292, 305, 317.**

6.07    Importantly and obviously, twenty-four (24) of the fifty-five (55) subheadings in Centennial's Table of Contents of its Original Complaint include specific dates and the facts complained of that it asserts violated each of the causes of action prior to April 1, 2022. **Orig. Cmplt. Pages, ii, iii, iv, v.** Further, Centennial specifically articulates specific wrongful acts each Plaintiff and Intervenor allegedly committed that they contend violated each of the causes of action and identify each of the dates that occurred prior to April 1, 2022. **Orig. Cmplt. ¶¶ 3–4, 6, 64–68,**

---

[1] American State Bank happened to share a name with a highly regarded Lubbock-based bank that was sold in 2012.

**94–112, 129–134, 157–159, 168, 177–181, 191–194, 203, 213–215, 225–226, 235–239, 248–252, 260–262, 270–272, 280–281, 289, 303–305, 315–316.**

**Amended Complaint**

6.08    On June 21, 2023, Centennial filed Plaintiff's First Amended Complaint in the Underlying Lawsuit against sixteen former employees and officers of the West Texas branches of Happy, dropping Ovalle. Attached as Exhibit B is Centennial's First Amended Complaint filed in the Underlying Lawsuit. ("Amended Complaint").

6.09    Centennial's 123-page Amended Complaint drops Centennial's conversion claim but adds a claim for violation of the Texas Uniform Trade Secrets Act and relabels the Knowing and Joint Participation claim, all for a total of ten claims against the Litigation Defendants. While the Litigation Defendants vehemently deny the allegations within the Amended Complaint against them, it is necessary to address these allegations in Glenn's FAC for the purpose of establishing coverage. As such, Centennial's allegations within this or any other pleading should not be deemed or construed as an admission of any allegation by Intervenor, each of which is expressly denied by Intervenor.

6.10    Just like it does in its Original Complaint, Centennial contends that beginning in October of 2021, the Litigation Defendants concocted a grand scheme to "steal" Happy's trade secrets and other confidential information, so that they could present a ready-to-use "Bank in a Box" to Happy's competitor, ASB. In reality, Happy entered into a Merger Agreement with Centennial in September of 2021 and the merger was completed on April 1, 2022.

6.11    In the months and weeks prior to the merger, Happy was preparing to merge its core computer and email system in conjunction with the upcoming merger and members of Happy's IT department supervised the downsizing and/or deletion of non-essential and older

emails of the Litigation Defendants to expedite the conversion from a server-based Outlook email program to the cloud-based Microsoft Office 365 utilized by Centennial. The allegations in the Amended Complaint take issue with these authorized actions that occurred by Centennial's pleadings as early as October 2021 and continued up through and beyond the date of merger of April 1, 2022. **Am. Cmplt. ¶¶ 3–4, 6, 63–64, 67–68, 94–110, 128–134, 153–159, 165–167, 174–177, 187–190, 199, 208–210, 220–221, 230–232, 240–243, 250–253, 261–263, 271, 286–288, 297–298.**

6.12    Centennial alleges that the Litigation Defendants carried out a scheme to "steal Happy Bank's most valuable confidential information and many of its customers and employees— **all while still employed by Happy Bank**." **Am. Cmplt. ¶ 3 (emphasis added)**. In fact, twenty (20) of the fifty (50) subheadings in Centennial's Table of Contents of its Amended Complaint include specific dates and the facts complained of that it asserts violated each of the causes of action prior to April 1, 2022. **Am. Cmplt. ¶¶ ii, iii, iv.** Further, Centennial articulates specific wrongful acts each Plaintiff and Intervenor allegedly committed that they contend violated each of the causes of action and identify each of the dates that occurred prior to April 1, 2022. **Am. Cmplt. ¶¶ 3–4, 6, 63–64, 67–68, 94–110, 128–134, 153–159, 165–167, 174–177, 187–190, 199, 208–210, 220–221, 230–232, 240–243, 250–253, 261–263, 271, 286–288, 297–298.**

**Insurance Coverage**

6.13    The Policies were in place to provide coverage for, among other things, precisely the type of claims raised and asserted by Centennial in both the Original Complaint and the Amended Complaint on file in the Underlying Lawsuit against Intervenor. Intervenor is an Insured under the Policies of insurance. Copies of the Policies are attached hereto as Exhibits C & D, respectively.

**Notice of Claim**

6.14   When Intervenor received notice of Centennial's suit, he properly notified all insurers, including the Defendant, of the claim on March 20, 2023. Attached as Exhibit E is Intervenor Glenn's Notice of Claim and Demand for Coverage and Defense of March 20, 2023.

6.15   Following notification, Stella Szantova Giordano ("Stella"), claims specialist for AXA XL, acknowledged receipt of Intervenor's Notice of Claim and Demand for Coverage and Defense on April 5, 2023. Attached as Exhibit F is Stella's Acknowledgment of Claim of April 5, 2023.

6.16   Not receiving any other response, Intervenor's counsel again contacted Stella, providing Intervenor's Motion and Brief in Support pursuant to 12b(6) filed in the Underlying Lawsuit and again explaining the urgency of the situation. Attached as Exhibit G is Intervenor's Follow Up Email of May 3, 2023.

6.17   On May 5, 2023, Stella responded and indicated XL Specialty had not completed its coverage analysis. Attached as Exhibit H is Stella's Response Email of May 5, 2023.

**Denial of Claim**

6.18   On May 19, 2023, Tammy Yuen of Skarzynski Marick & Black, LLP of New York, New York, on behalf of Defendant XL Specialty and AXA XL, the claims handler for XL Specialty wrote a letter denying any obligation to defend or to indemnify the Intervenor as a result of Centennial's Lawsuit "...because the Lawsuit includes allegations of wrongful conduct occurring on or after April 1, 2022." Attached as Exhibit I is XL Specialty's Denial Letter of May 19, 2023.

6.19   In particular, Yuen cited Endorsement No. 9(4)(c) to support XL Specialty's denial quoting language that "No coverage will be available … for any Claim, ... based upon, arising out

of, directly or indirectly resulting from, inconsequence of, or in any way involving a Wrongful Act . . . committed or allegedly committed on or after the Runoff Date ….." Exhibit I.

6.20  In the denial letter, Yuen expands the plain language of the Policies and claims "Endorsement 9(4)(c) bars coverage for the entirety of any Claim that includes both allegations of conduct that occurred before *and* after the Runoff Date." Exhibit I. This is simply not the law in Texas nor a proper reading of the policies. This is simply a bad faith denial.

**<u>Wrongful Denial Under Texas Law and the Policy</u>**

6.21  Defendant's coverage position intentionally ignores the clear factual allegations that include alleged wrongful conduct that transpired prior to the April 1, 2022, "Runoff Date." **Orig. Cmplt. ¶¶ 3–4, 6, 64–68, 94–112, 129–134, 157–159, 168, 177–181, 191–194, 203, 213–215, 225–226, 235–239, 248–252, 260–262, 270–272, 280–281, 289, 303–305, 315–316; Am. Cmplt. ¶¶ 3–4, 6, 63–64, 67–68, 94–110, 128–134, 153–159, 165–167, 174–177, 187–190, 199, 208–210, 220–221, 230–232, 240–243, 250–253, 261–263, 271, 286–288, 297–298.**

6.22  Significantly, the Court must give the facts alleged a liberal interpretation, resolving all doubts about the insurer's duty to defend in favor of the insured.[2] As the Texas Supreme Court has explained:

> the insurer is obligated to defend if there is, potentially, a case under the complaint within the coverage of the policy. Stated differently, in case of doubt as to whether or not the allegations of a complaint against the insured state a cause of action within the coverage of a liability policy sufficient to compel the insurer to defend the action, such doubt will be resolved in the insured's favor."[3]

---

[2] *Ewing Constr. Co., Inc. v. Amerisure Ins. Co.*, 420 S.W.3d 30, 33 (Tex. 2014) ("all doubts regarding the duty to defend are resolved in the insured's favor"); *King v. Dallas Fire Ins. Co.*, 85 S.W.3d 185, 187 (Tex. 2002) ("[W]e resolve all doubts regarding the duty to defend in favor of the duty."); *see GuideOne Elite Ins. Co. v. Fielder Rd. Baptist Church*, 197 S.W.3d 305, 308 (Tex. 2006) ("allegations against the insured are liberally construed in favor of coverage"); *see also Liberty Mut. Ins. Co. v. Graham*, 473 F.3d 596, 600 (5th Cir. 2006).
[3] *Heyden Newport Chem. Corp. v. S. Gen. Ins. Co.*, 387 S.W.2d 22, 26 (Tex. 1965) (quoting C.T. Drechsler, Annotation, *Allegations in Third Person's Action Against Insured as Determining Liability Insurer's Duty to Defend*, 50 A.L.R.2d 458, 504 (1956)).

6.23   Further, in a Southern District of New York case analyzing the precise policy language under Texas law, noted that "there are no material differences between a duty to defend and a duty to advance Defense Expenses." *Julio & Sons Co. v. Travelers Cas. & Sur. Co. of Am.,* 591 F. Supp. 2d 651, 659-660 (S.D.N.Y. 2008).[4] The lone Texas case discussing an insurer's "duty to advance" uncovered defense expenses required the insurer to advance all defense costs for causes of actions that were clearly not covered.[5]

6.24   Regardless of the legal theories or causes of action alleged, the inquiry is whether the facts alleged in the Underlying Lawsuit potentially give rise to any claim triggering coverage under the policy. In the present case, there is no doubt that at least some if not most of the factual basis to support all of the causes of action for a covered offense occurred prior to the "Runoff Date" articulated as the basis for denial. That said, if the insurer's duty to defend is triggered by even one of the factual allegations prior to April 1, 2022, asserted in a lawsuit, the insurer is obligated to advance defense costs to defend the entire case.[6]

## VII.
### REQUEST FOR DECLARATORY JUDGMENT

7.01   XL Specialty is required to advance all defense costs incurred by Intervenor in the Underlying Lawsuit but has refused to do so.

---

[4] In so holding the Court noted that "the whole purpose of advancing legal expenses rather than reimbursing them at the conclusion of the litigation is that insured organizations may not have the cash on hand to finance their own defense." *Id.*

[5] *Burks v. XL Specialty Ins. Co.*, 534 S.W.3d 458 (Tex. App. Houston [14th Dist.] 2015, no pet.).

[6] *Evanston Ins. Co. v. Legacy of Life, Inc.*, 370 S.W.3d 377, 380 (Tex. 2012) (if complaint "includes even one covered claim, the insurer must defend the entire suit"); (quoting *Zurich Am. Ins. Co. v. Nokia, Inc.,* 268 S.W.3d 487, 491 (Tex. 2008)); *See St. Paul Ins. Co. v. Tex. Dep't of Transp.*, 999 S.W.2d 881, 884 (Tex. App.-Austin 1999, pet. denied) ("Once coverage has been found for any portion of a suit, an insurer must defend the entire suit."); *St. Paul Fire & Marine Ins. Co. v. Green Tree Fin. Corp.-Tex.*, 249 F.3d 389, 395 (5th Cir. 2001); *see also Harken Expl. Co. v. Sphere Drake Ins. PLC*, 261 F.3d 466, 474 (5th Cir. 2001) (holding that the insurer "must defend [the insured] against the entire suit including causes of action that would not alone trigger the duty to defend, regardless whether the complaint is pled in the alternative or not because the [underlying plaintiffs'] factual allegations of negligence are sufficient to trigger the duty to defend").

7.02    As established, a justiciable controversy exists as to the rights of Intervenor as to coverage and defense under the Policies.

7.03    Therefore, pursuant to Rule 57 of the Federal Rules of Civil Procedure and 28 U.S.C. §§ 2201 and 2202, Intervenor hereby requests that the Court make the following declarations:

1) Declare that policy numbers ELU173540-21 and ELU173544-21 require Defendant XL Specialty Insurance Company to advance all defense costs incurred by Intervenor in defending himself in the Underlying Lawsuit to Intervenor and/or reimburse Intervenor for same.

2) Declare that the Policies, and each of them, require Defendant XL Specialty Insurance Company to indemnify Intervenor for damages and losses, including costs of defense, resulting from the claims asserted by Centennial against Intervenor in the Underlying Lawsuit.

3) Declare that the Defendant XL Specialty Insurance Company has waived or is estopped from denying coverage to Intervenor for advancing and/or reimbursing defense costs to Intervenor and for indemnification in response to the claims asserted by Centennial against Intervenor in the Underlying Lawsuit.

7.04    Intervenor has retained the firm of Mullin Hoard & Brown, LLP, to represent him in this action and has agreed to pay the firm reasonable and necessary attorney's fees. An award of reasonable and necessary attorney's fees to Intervenor would be equitable and just in connection with the prosecution of this suit.

## VIII.

### BREACH OF CONTRACT

8.01   Defendant's actions in improperly denying coverage and failing to advance or reimburse for defense costs in the Underlying Lawsuit amount to a present and/or anticipatory breach of its duties to Intervenor under the Policies.

8.02   As a result of Defendant's breach, Intervenor is without the coverage promised and paid for under the Policies. Defendant's breach has damaged the Intervenor in an amount exceeding $75,000.

## IX.

### VIOLATION OF INSURANCE CODE CHAPTER 541

9.01   The acts and omissions of Defendant constitute violations of Texas Insurance Code Chapter 541. Despite clear obligations of coverage and defense, Defendant failed to meet its obligations to its insured Intervenor Ross Glenn. Defendant's violations of Chapter 541 include:

   a.   misrepresenting and false advertising of the Policies;

   b.   misrepresenting a material fact or policy provision relating to coverage at issue;

   c.   failing to provide to a policyholder a reasonable explanation of the basis in the policy, in relation to the facts or applicable law, for the insurer's denial of a claim; and

   d.   failing within a reasonable time to affirm or deny coverage of a claim.

## X.

### CONDITIONS PRECEDENT

10.01   To the extent applicable, all conditions precedent have been performed, have occurred, or have been waived.

## XI.

### TREBLE DAMAGES

11.01  The acts committed by Defendant in denying coverage were done knowingly despite clear and applicable coverage. Accordingly, Intervenor seeks to treble the damage award found by the trier of fact pursuant to Tex. Ins. Code Section 541.152(b).

## XII.

### ATTORNEY'S FEES

12.01  Intervenor has retained the firm of Mullin Hoard & Brown, LLP, to represent him in this action and has agreed to pay the firm reasonable and necessary attorney's fees. An award of reasonable and necessary attorney's fees to Intervenor would be equitable and just. Further, Intervenor is entitled to recover all attorney fees and costs pursuant to Section 541.152 of the Texas Insurance Code.  TEX. INS. Code § 541.152(a)(1); TEX. CIV. PRAC. & REM. Code § 38.001, and applicable law.

## XIII.

### JURY DEMAND

13.01  Intervenor demands a jury trial and tender the appropriate fee with this First Amended Complaint.

### PRAYER

For these reasons, Intervenor requests that the Defendant be cited to appear and answer, and that on final trial, that Intervenor have the following relief:

1. Declare that policy numbers ELU173540-21 and ELU173544-21 require Defendant XL Specialty Insurance Company to advance all defense costs incurred by Intervenor in defending himself in the Underlying Lawsuit to Intervenor and/or reimburse Intervenor for same.

2. Declare that the Policies, and each of them, require Defendant XL Specialty Insurance Company to indemnify Intervenor for damages and losses, including costs of defense, resulting from the claims asserted by Centennial against Intervenor in the Underlying Lawsuit.

3. Declare that the Defendant XL Specialty Insurance Company has waived or is estopped from denying coverage to Intervenor for advancing and/or reimbursing defense costs to Intervenor and for indemnification in response to the claims asserted by Centennial against Intervenor in the Underlying Lawsuit.

4. Actual damages.

5. Treble damages.

6. Attorney's fees

7. Costs of court.

8. Such other and further relief to which the plaintiff may be justly entitled.

Respectfully submitted,

/s/ *Mark S. Logsdon*
**MULLIN HOARD & BROWN, L.L.P.**

David C. Mullin, Texas Bar No. 14651600
Mark S. Logsdon, Texas Bar No. 00795486
500 South Taylor, Suite 800
P.O. Box 31656
Amarillo, Texas 79120-1656
Telephone: (806) 372-5050
Facsimile: (806) 372-5086
Email: dmullin@mhba.com
mlogsdon@mhba.com

-and-

Molly Manning, Texas Bar No. 24012646
1500 Broadway, Suite 700
P.O. Box 2585
Lubbock, Texas 79408-2585
Telephone: (806) 765-7491
Facsimile: (806) 765-0553
Email: mmanning@mhba.com

**ATTORNEYS FOR INTERVENOR**

**CERTIFICATE OF SERVICE**

A true and correct copy of the above and foregoing instrument was on September 19, 2023, served on the attorneys of record via the Court's ECF notification system on all counsel who have entered their appearance in the Court's ECF system.

Natasha N. Taylor
Ronnie L. Flack, Jr.
WRIGHT CLOSE & BARGER, LLP
One Riverway, Suite 2200
Houston, Texas 77056
taylor@wrightclosebarger.com
flack@wrightclosebarger.com

*Attorneys for Defendant XL Specialty Insurance Company*

J. Paul Manning
FIELD, MANNING, STONE
HAWTHORNE & AYCOCK, P.C.
2112 Indiana Avenue
Lubbock, Texas 79410-1499
jpmanning@lubbocklawfirm.com

*Attorneys for Plaintiffs Jerry "Bud" Holmes, Jay House, Channing Kammlah, Drew Phillips, Willis McCutcheon, Michael Jackson, Jessica Terrell, Jason West, Samuel "Trey" Weaver, Derek Dollahite, Brian Murry, Diana Richarte, David Hutson, and James Sikes*

/s/ *Mark S. Logsdon*
Mark S. Logsdon

## EXHIBITS

| | |
|---|---|
| **Exhibit A** | Centennial's Original Complaint |
| **Exhibit B** | Centennial's First Amended Complaint |
| **Exhibit C** | Insurance Policy |
| **Exhibit D** | Insurance Policy |
| **Exhibit E** | Intervenor's Notice of Claim and Demand for Coverage and Defense of March 20, 2023 |
| **Exhibit F** | Acknowledgment of Claim of April 5, 2023 |
| **Exhibit G** | Intervenor's Follow Up Email of May 3, 2023 |
| **Exhibit H** | Stella's Response Email of May 5, 2023 |
| **Exhibit I** | XL Specialty's Denial Letter of May 19, 2023 |